NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NELSON ESTOPINAN, | Civil Action No.: 2:16-cv-08684 |
| Plaintiff, | |
| v. | **OPINION** |
| LAKELAND BUS LINES, INC. and LOCAL UNION 1614, AMALGAMATED TRANSIT UNION, | |
| Defendants. | |

**CECCHI, District Judge.**

## I.    **INTRODUCTION**

This matter comes before the Court on the motions of Lakeland Bus Lines, Inc. ("Lakeland") and Local Union 1614, Amalgamated Transit Union (the "Union") (collectively, "Defendants") to dismiss Plaintiff Nelson Estopinan's ("Plaintiff") Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF Nos. 8, 18). The Court has given careful consideration to the submissions from each party. Pursuant to Fed. R. Civ. P. 78(b), no oral argument was heard. For the reasons that follow, Defendants' Motions to Dismiss are granted.

## II.    **BACKGROUND**

Lakeland employed Plaintiff, a Spanish speaking Hispanic and Portuguese man, as a mechanic with the title "Mechanic B" on April 19, 1995. (ECF No. 1 ("Cmpl.") ¶ 14-15).

On May 16, 2013, Plaintiff underwent hernia surgery. (*Id.* ¶ 23). Upon his return to work, he provided a doctor's note to Lakeland, requesting a "light duty" accommodation. (*Id.* ¶ 24). Lakeland told Plaintiff that it did not have any "light duty" assignments, and thus, Plaintiff was

required to perform his regular duties. (*Id.* ¶¶ 25-26). According to Plaintiff, it took him "a few days to return to the speed and efficiency that [he] had previously worked." (*Id.* ¶ 27). Plaintiff declares that during the time between his hernia surgery and his return to "full speed and efficiency" in late June 2013, Lakeland owners and management received complaints from other employees about his work. (*Id.* ¶ 28). Plaintiff contends that the complaints included that he was "working slowly" and was "too old for his job." (*Id.*).

Plaintiff also maintains that during this time, he was harassed by Lakeland employees who were also officers of the Union (the "Union Officers"). (*Id.* ¶¶ 48-53). The Union Officers allegedly used "threatening, profane, and abusive language" related to Plaintiff's national origin. (*Id.* ¶¶ 51-53). They also allegedly harbored "absolute hatred for the Plaintiff's age and national origin." (*Id.* ¶¶ 57-59).

On July 13, 2013, Lakeland's management directed Plaintiff to take a "BPF" test. (*Id.* ¶ 29). Plaintiff asserts that the Union Officers pushed Lakeland to administer the "BPF" test, (*id.* ¶¶ 54-56), which assesses knowledge of codes for a BPF machine used to repair emissions systems for engines on buses, and was used to ascertain whether Plaintiff was capable of performing his duties as "Mechanic B." (*Id.* ¶¶ 29-30). Plaintiff claims that the "BPF" test was only administered twice over his eighteen years at the company, to him and another Hispanic employee in 2013, and that it has not been administered again since July 13, 2013. (*Id.* ¶¶ 31-32).

Lakeland determined that Plaintiff did not do "well enough" on the "BPF" test to maintain his position of "Mechanic B." (*Id.* ¶ 33). As a result, on July 18, 2013, Plaintiff: (1) received a demotion and job title change from "Mechanic B" to "Repairman 3;" (2) received a four dollar per hour wage decrease; and (3) lost his seniority. (*Id.*). Additionally, on September 26, 2013, Plaintiff's shift changed from the overnight shift to the day shift. (*Id.* ¶ 34). Bruce Maclean

("Maclean"), the Shop Steward at Lakeland, replaced the Plaintiff as the most senior employee. (*Id.* ¶¶ 35, 48). Following these events, Plaintiff filed a grievance with the Union. (*Id.* ¶ 60). Plaintiff asserts that the Union neither addressed his grievance nor pursued arbitration to resolve his claims. (*Id.* ¶¶ 60-61).

Plaintiff contends that Lakeland's actions violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*[1] Additionally, Plaintiff contends that both of the Defendants violated the ADEA and Title VII by subjecting him to a hostile work environment because of his age and national origin. (*Id.* ¶¶ 111, 113, 117).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and on September 29, 2016, the EEOC issued a Right to Sue letter authorizing Plaintiff to commence an action against Defendants. (ECF Nos. 1-3, 1-4). On November 22, 2016, Plaintiff filed his Complaint in this Court. (Cmpl). On January 2, 2017, Lakeland filed a Motion to Dismiss. (ECF No. 8). On February 17, 2017, the Union filed a separate Motion to Dismiss. (ECF No. 18). Plaintiff and Defendants subsequently filed a number of submissions, which have been duly considered by the Court.

## III.   **LEGAL STANDARD**

### A.   **Defendants' Motions to Dismiss Pursuant to Rule 12(b)(6)**

For a complaint to survive dismissal pursuant to Fed. R. Civ. P. 12(b)(6), it "must contain

---

[1] Although Plaintiff's Complaint alleges six state law causes of action against Defendants, (Cmpl. ¶¶ 83-109, 114-117), Plaintiff "requests that the Court dismiss [these] causes of action." (ECF. Nos. 12-3 at 20, 19-4 at 19). As such, claims IV, V, VI, VII, X, and XI are dismissed.

3

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' . . . will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

## IV.    DISCUSSION

### A.    Plaintiff's Demotion[2]

#### 1.    Americans with Disabilities Act

The ADA prohibits an employer from, among other things, "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees . . . ." 42 U.S.C. § 12112(a).

In order to survive a motion to dismiss on a discrimination claim under the ADA, "a plaintiff must show (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Smith v. Pappell*, No. 08-1898, 2008 WL 4600770, at *4 (D.N.J. Oct. 8, 2008) (quoting *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000)). A qualified individual with a disability under the ADA is defined as a person with "a physical or mental impairment that

---

[2] Counts I, II, and III regarding Plaintiff's demotion are brought solely against Lakeland.

substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(a). Impairments that last less than six months are generally not considered disabilities under the ADA. 42 U.S.C. § 12102(3)(B).

The facts alleged by Plaintiff make it clear that he was not "disabled" within the meaning of the ADA. Plaintiff states that he had a hernia operation in May 2013, (Cmpl. ¶ 23), but a one-time surgery does not constitute a disability under the ADA. *See Butler v. BTC Foods Inc*., No. 12-492, 2012 WL 5315034, at *3 (E.D. Pa. Oct. 19, 2012) ("Plaintiff has not alleged that his hernia is anything more than a one-time occurrence. Furthermore, an employee's inability to work for a period after recovering from surgery does not necessarily support a finding that Plaintiff has a disability under the ADA."). Additionally, Plaintiff states that he was able to return to work at his "full speed and efficiency" within a matter of "a few days." (Cmpl. ¶ 27). As such, Plaintiff has failed to articulate any facts entitling him to relief for a violation of the ADA, and the Court will dismiss Plaintiff's claim.[3] *See Smith*, 2008 WL 4600770, at *4 ("The admittedly temporary nature of Plaintiff's medical condition puts her claim outside the scope of the ADA.").

## 2. Age Discrimination in Employment Act

The ADEA prohibits an employer from, among other things, discharging or otherwise discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

A plaintiff may establish a claim under the ADEA through either direct or circumstantial evidence. In the absence of direct evidence of an ADEA violation, a plaintiff establishes

---

[3] Because the Court need only analyze a reasonable accommodation claim after a case of discrimination under the ADA has been adequately pled, the Court need not analyze Plaintiff's reasonable accommodation claim at this stage. *See Kongtcheu v. Constable*, No. 12-6872, 2016 WL 270075, at *6 (D.N.J. Jan. 20, 2016), *aff'd*, 674 F. App'x 216 (3d Cir. 2016.) ("If a plaintiff cannot establish a prima facie case of discrimination there is no violation of . . . the ADA . . . and no accommodations are necessary.").

discrimination by means of the *McDonnell Douglas* burden shifting analysis. *See Burton v. Teleflex, Inc.*, 707 F.3d 417, 425-26 (3d Cir. 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)). Under *McDonnell Douglas*, as applied to claims under the ADEA, a plaintiff must prove that he: "(1) is a member of the protected class, i.e. at least 40 years of age, 29 U.S.C. § 631(a), (2) is qualified for the position, (3) suffered an adverse employment decision, and (4) in the case of a demotion or discharge, was replaced by a sufficiently younger person to create an inference of age discrimination." *Simpson v. Kay Jewelers, Sterling Div., Inc.*, 142 F.3d 639, 644 n.5 (3d Cir. 1998); *see also Burton v. Teleflex*, 707 F.3d at 426.

Because Plaintiff has not provided direct evidence of discrimination, the *McDonnell Douglas* burden shifting analysis governs his claim. *See Petruska v. Reckitt Benckiser, LLC*, No. 14-3663, 2015 WL 1421908, at *3 (D.N.J. Mar. 26, 2015). ("Evidence is not direct 'where the trier of fact must *infer* the discrimination on the basis of age from an employer's remarks.'"); *see also Greengrass v. Provident Bank*, No. 16-4105, 2017 WL 3671303, at *2, n.1 (D.N.J. Aug. 25, 2017) (finding that Plaintiff's "stand-alone assertions" that her supervisor engaged in age discrimination did not constitute direct evidence). Here, the Complaint includes allegations that Plaintiff was born in 1948, and so was over age 40 when he was demoted in July 2013. (Cmpl. ¶ 14). Further, Plaintiff maintains that he suffered an adverse employment action when he was demoted from "Mechanic B" to "Repairman 3." (*Id.* ¶¶ 18, 33). *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 411-12 (3d Cir. 1999) (noting that demotions constitute adverse employment action). Finally, Plaintiff's assertion that he had "eighteen years-worth of seniority," (Cmpl. ¶¶ 17, 19), sufficiently pleads his qualifications "by way of his continued employment with Defendant." *See Santos v. Iron Mountain Film & Sound*, No. 12-4214, 2013 WL 6054832, at *4 (D.N.J. Nov. 14, 2013). Plaintiff fails, however, to establish the final *McDonnell Douglas* requirement, as the

Complaint makes no reference to the age of his alleged replacement, Maclean. (Cmpl. ¶ 35). In fact, Plaintiff not only fails to establish that Maclean was sufficiently younger than Plaintiff, but also fails to establish that Maclean specifically replaced Plaintiff in Plaintiff's exact position. (*Id.*).[4] As such, Plaintiff has failed to articulate any facts entitling him to relief for a violation of the ADEA, and the Court will dismiss Plaintiff's claim.

### 3.  Title VII of the Civil Rights Act of 1964

Title VII provides that "[i]t shall be an unlawful employment practice for a labor organization . . . to discriminate against any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c).

A Title VII discrimination claim is analyzed using a similar framework to that established in *McDonnell Douglas*. Under *McDonnell Douglas*, as applied to claims under Title VII, "a plaintiff must show that he belongs to a protected class; that he was subject to an adverse employment action despite being qualified for the position; and that, under circumstances that raise an inference of discriminatory action, similarly situated persons who are not members of the protected class were treated more favorably." *See Liggon v. Simmons Pet Food*, No. 15-1472, 2015 WL 1189561, at *2 (D.N.J. Mar. 13, 2015). Here, Plaintiff alleges that he is Hispanic and Portuguese. (Cmpl. ¶ 14). "Since national origin and race are protected classes under Title VII, the complaint may be construed to support" a finding that Plaintiff is a member of a protected class.[5] *Santos*, 2013 WL 6054832, at *4; *see also Paradoa v. Philadelphia Hous. Auth.*, 610 F.

---

[4] The Complaint states that Maclean replaced Plaintiff as "the most senior employee," but does not indicate whether Maclean specifically replaced Plaintiff as "Mechanic B." (Cmpl. ¶ 35).

[5] Plaintiff describes himself as a Spanish speaking Hispanic and Portuguese man. (Cmpl. ¶¶ 14-15). Defendants argue that Plaintiff fails to state a claim because Plaintiff alleges that he was discriminated against because of his national origin, Hispanic, which Defendants assert for the purposes of Title VII is considered race. (ECF Nos. 8 at 15-16, 18 at 7-8). Both race and national

App'x 163, 166 (3d Cir. 2015) (noting that an employee sufficiently alleged that she was a member of a protected class by way of being Hispanic); *see also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) (holding that Plaintiff established his status as a member of a protected class by way of his ethnicity). Further, as discussed above, Plaintiff has sufficiently alleged the second and third requirements of *McDonnell Douglas*. Plaintiff, however, fails to establish the final *McDonnell Douglas* requirement. Again, Plaintiff does not contend that Maclean specifically replaced Plaintiff in Plaintiff's exact position, and additionally fails to allege that Maclean is not a member of the protected classes that Plaintiff purports to be a part of. (Cmpl. ¶ 35). As such, Plaintiff has failed to articulate any facts entitling him to relief for a violation of Title VII, and the Court will dismiss Plaintiff's claim.

### B. Hostile Work Environment[6]

#### 1. Age Discrimination in Employment Act

In order to prevail on a claim for hostile work environment under the ADEA, the plaintiff must show "intentional discrimination because of age, which is (2) pervasive and regular, and which (3) has detrimental effects that (4) would be suffered by [a] reasonable person of the same age in the same positon; and (5) respondeat superior liability exists." *Magerr v. City of Phila.*, No. 15-4264, 2016 WL 1404156, at *10 (E.D. Pa. Apr. 11, 2016) (alteration in original) (citations omitted). "[A] complaint asserts a facially plausible hostile work environment claim only if the

---

origin are protected under Title VII. Because the Complaint alleges discrimination as to Plaintiff's Hispanic heritage, at this stage the Court finds that Plaintiff has sufficiently pled that he is a member of a protected class through his race, which would support a Title VII claim of racial discrimination. In any amended pleading, Plaintiff has the opportunity to further develop such a claim.

[6] Counts VIII and IX regarding Plaintiff's subjection to a hostile work environment are brought against both Lakeland and the Union.

discrimination was alleged to be 'sufficiently severe or pervasive' to effectively alter the terms and conditions of the plaintiff's employment." *Id.* at *11 (citations omitted). "To determine whether harassment is sufficiently severe or pervasive to create a hostile work environment, [courts] consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (citations omitted). Therefore, "'simple teasing,' off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Clem v. Case Pork Roll Co.*, No. 15-6809, 2016 WL 3912021, at *5 (D.N.J. July 18, 2016) (citation omitted).

Here, Plaintiff claims that he was subject to a hostile work environment due to his age. As to Lakeland, Plaintiff argues that Lakeland gave him the "BPF" test, demoted him, reduced his wages, and changed his shift because of his age. (Cmpl. ¶¶ 37, 40, 43, 46). As to the Union, Plaintiff maintains that the Union Officers had "absolute hatred for Plaintiff's age," believed he was too old for his job, and did not address the grievance that Plaintiff filed about Lakeland. (*Id.* ¶¶ 28, 57-59, 60-62, 103). As to both Defendants, Plaintiff believes that they were "in cahoots" to discriminate against him based on his age. (*Id.* ¶ 64). Despite Plaintiff's allegations, however, the Complaint does not allege that such purported discrimination was severe or pervasive. Plaintiff cites to no facts pertaining to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *See Magerr*, 2016 WL 1404156, at *11. Without more information, Plaintiff's allegations are insufficient to sustain a hostile work environment claim and as such, the Court will dismiss Plaintiff's claim.

## 2. Title VII of the Civil Rights Act of 1964

Plaintiff additionally claims that he was subject to a hostile work environment due to his national origin. In order to prevail on a hostile work environment claim under Title VII, a plaintiff must show the same elements as a hostile work environment claim under the ADEA. *See Reynolds v. Aria Health*, No. 12-2954, 2013 WL 2392903, at *7 (E.D. Pa. May 31, 2013) ("[There are]" five elements necessary to establish a successful hostile work environment claim: (1) the plaintiff suffered intentional discrimination because of his or her membership in the protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in that position; and (5) the existence of respondeat superior liability.").

Here, Plaintiff argues that Lakeland was "a hot bed for racial and national origin inappropriate language and activity directed towards the Plaintiff." (Cmpl. ¶ 22). Plaintiff further argues that Lakeland gave him the "BPF" test, demoted him, reduced his wages, and changed his shift because of his national origin. (*Id.* ¶¶ 38, 41, 44, 47). As to the Union, Plaintiff maintains that the Union Officers used "threatening, profane, and abusive language relating to [his] national origin," had "absolute hatred for the Plaintiff's . . . national origin," and did not address the grievance that Plaintiff filed about Lakeland. (*Id.* ¶¶ 51-53, 57-59, 60-62). As to both Defendants, Plaintiff believes that they were "in cahoots" to discriminate against Plaintiff based on his national origin. (*Id.* ¶ 65). Despite Plaintiff's allegations, however, the Complaint does not allege that such purported discrimination was severe or pervasive. Plaintiff cites to no facts pertaining to whether the discriminatory conduct was frequent, physically threatening, humiliating, or disruptive. *See Reynolds*, 2013 WL 2392903, at *7. Without more information, Plaintiff's allegations do not support a hostile work environment claim and as such, the Court will dismiss Plaintiff's claim.

## V.    **CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss are granted. To the extent Plaintiff can cure the pleading deficiencies by way of amendment, he may file an amended complaint within thirty (30) days of the date of this Opinion. An appropriate Order follows this Opinion.

DATED: September 22, 2017

**CLAIRE C. CECCHI, U.S.D.J.**